[Civ. No. 9047.   Third Dist.   July 1, 1957.]

PHILLIP BROWN et al., Appellants, v. G. H. BUSCH, as Administrator, etc., et al., Respondents.

Kasch & Cook and Leo M. Cook for Appellants.

Royal E. Handlos for Respondents.

VAN DYKE, P. J.—Plaintiffs in the trial court brought this action to quiet title to real property and to set aside an extrajudicial sale of the property under a deed of trust.

The Mendocino County Title Company, a corporation engaged in the title insurance and title abstract business, was the trustee under a deed of trust executed by plaintiffs as trustors for the benefit of Olive E. Busch, who loaned plaintiffs the sum of $14,000 upon the security afforded by the deed of trust. Defendants Cox and Stinehoff purchased at the trustee's sale. Plaintiffs appeal from a judgment denying them any relief and quieting the title of the purchasers.

▪▪▪ Plaintiffs alleged that the sale was conducted unfairly by reason of the following facts: That at the time of the sale the fair and reasonable value of the property was $35,000; that a large number of prospective bidders attended the sale; that the sale was conducted by an officer of the trustee title company with the assistance of the attorney for defendant Busch, administrator of the estate of Olive E. Busch; that the title company was the only such company insuring titles in Mendocino County, where the property was situated; that it was a fact of general knowledge that unless said title company would insure a title it would be unmarketable and of little or no value; that said officer of the title company stated at the sale that by making the sale the title company was not guaranteeing title to the property to be sold; that the attorney for administrator Busch announced at the sale that the title was not being guaranteed; that as a result of these statements the prospective bidders believed that the title of the trustee was defective, that it would not upon application insure the title in a purchaser and that the title was unmarketable and of little or no value; that as a further result all of the bidders except two failed to bid; that in truth and in fact the title was marketable and the title company would have issued a title insurance policy guaranteeing the title to said property upon application therefor; that the bid of defendants Cox and Stinehoff in the amount of $16,000 for which the property was struck off to them was disproportionate to and less than 50 per cent of the fair market value of the property; that plaintiffs offered and were willing to pay to administrator Busch the entire indebtedness secured by the deed of trust, together with interest to date of judgment and all lawful fees, charges, expenses and advances to which the trustor and beneficiary

might be entitled under the terms of the security instrument and generally to do equity to all parties in interest.

The trial court found that, although plaintiffs had offered to do equity as alleged, the sale had been fairly conducted and that defendants were entitled to judgment.

It appears that the sale had been noticed for March 19, 1954, that it was conducted by one Heil, an officer of the trustee title company, and that a number of persons were present at the sale. Heil testified that the title company trustee was the only title company operating in Mendocino County and that he had made an announcement at the sale that the Mendocino County Title Company, as trustee, did not guarantee the title nor express any opinion as to the same. There was conflicting testimony as to just what statements had been made by Heil, but under the well-known rules on appeal we must assume that the trial court considered Heil's testimony to be accurate. Mr. Brazier, an attorney representing administrator Busch, attended the sale, and testified that he, speaking, as he said, in fairness to those present as prospective bidders, told them that there was an irrigation system on the property which had not been entirely paid for and that there was a balance due on it of somewhere around $1,500 to $2,500; that he did not mention any lien and he could not recall whether or not he had stated the system was being sold under contract of sale; but that by what he said he merely intended to inform the bidders that the irrigation system had not been paid for. Brazier made the first bid, amounting to approximately $15,000. One Lewis raised the bid by $100. Cox and Stinehoff then bid $16,000, and the property was sold to them. After the sale the title company issued its policy of title insurance, vesting the property in the purchasers. Lewis, a real estate broker, testified that before attending the sale he visited the office of the trustee, examined the title report and was told the sale would be made without warranty; that the fair and reasonable market value of the property was $28,000 to $30,000 and that he had $22,000 cash with him at the sale, but did not bid because he was afraid of the title, due to the remarks of Heil and Brazier. The property consisted of 50 acres of river bottom farming land near Ukiah. The testimony as to its fair market value ranged from $22,000 to $35,000.

Although a sale under a deed of trust is open to attack in equity wherein the court will review the proceed-

ings with care to see that the rights of the trustor have not been violated (*Py* v. *Pleitner,* 70 Cal.App.2d 576, 579 [161 P.2d 393]), and although such sales must be conducted fairly, openly, and with due diligence and sound discretion on the part of the trustee to protect the rights of all persons interested and to obtain a reasonable price (59 C.J.S. "Mortgages," p. 959, § 572; *Kleckner* v. *Bank of America,* 97 Cal.App.2d 30, 33 [217 P.2d 28]), nevertheless the issue of whether or not the facts justify the setting aside of the sale presents generally a question of fact to the trier of fact and much must be left to his discretion. ■ There is a presumption that the sale was conducted regularly and fairly. (*Stevens* v. *Plumas Eureka Annex Min. Co.,* 2 Cal.2d 493 [41 P.2d 927].) We think that the evidence here could do no more than to place an issue of fact before the trial court which the court has resolved against the appellants and that, under the circumstances, in view of the whole record, this court could not say that the trial court has not properly decided the cause.

Looking at the announcement made by Heil, we see that it cannot be said that it was other than a truthful statement. ■ The trustee sells the title he receives. It is not his duty to guarantee the title in any way or to assure anyone that it is good and marketable. Even if that title be defective, the trustee must still on proper demand proceed to sell such title as he took. ■ Where a title company acts as trustee and conducts the sale, persons bidding at the sale may well bid under the impression that because a title company, engaged in the business of insuring titles, is making the sale as trustee, it will insure the title; and they may for that reason be led into bids higher than they would otherwise make, and feel, when title insurance is not forthcoming, that the trustee has acted fraudulently to their damage. The trial court could properly hold that the announcement of Heil was neither unfair in purpose nor in effect. As to the announcement of Brazier the trial court could equally hold that it was fairly intended and did not misrepresent any material fact to bidders. The court was not obliged to accept the testimony of the witness Lewis as to the effect of the announcements upon him. Anyone viewing the property anticipatory to bidding at the sale and observing a valuable irrigation system installed upon the property might well have been led to believe that he could figure the full value of such into the value of the property in arriving at the

amount which he wanted to bid, and if it turned out that by an agreement of sale title was reserved in the one who sold and installed the system and that the system either had to be given up or paid for such a bidder might feel that he had been deceived by an appearance that did not turn out to be fact. A memorandum opinion of the trial court appears in the record, wherein the court stated the following: "There was some testimony that the property sold may be worth more than was obtained, but the Court does not see any unfairness in the sale as defined in the several cases cited by counsel for the plaintiff. In view of the fact that the trustee was the Title Guaranty Company, it would seem reasonable for them to inform all prospective buyers that the trustee at this sale does not guarantee or warrant title. This is a mere statement of the true significance of the trustee's deed which carries no warranty of title, but conveys only such title as the trustee received. The statement does not appear to be untrue, unfair, fraudulent or misleading. The disclosure by Attorney Brazier of certain indebtedness for irrigation installations on the land, was necessary and proper in fairness to all prospective purchasers."

The Supreme Court in *Central Nat. Bank* v. *Bell,* 5 Cal.2d 324, 328 [54 P.2d 1107], said: "It is no new doctrine in this state that mere inadequacy of price is not sufficient ground for setting aside a trustee's sale legally conducted, in the absence of proof of some element of fraud, unfairness or oppression by which the result is brought about."

The judgment appealed from is affirmed.

Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 27, 1957.