[No. S049019. Nov. 21, 1996.]

GLORIA J. LEZINE, Plaintiff and Respondent, v.
SECURITY PACIFIC FINANCIAL SERVICES, INC., Defendant and
Appellant.

**COUNSEL**

Francis J. Cunningham III, M. Michele Lines and Douglas H. Riegelhuth for Defendant and Appellant.

Donner & Levine, Lawrence D. Levine, Donner & Donner, Lori A. Donner and J. Caleb Donner for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—During his marriage to plaintiff Gloria J. Lezine (plaintiff), Henry Lezine (Lezine) unilaterally transferred a security interest in community real property (the Halm Avenue property) to defendant Security Pacific Financial Services, Inc. (Security Pacific), without the knowledge or consent of plaintiff, in violation of former section 5127 of the Civil Code (hereafter former section 5127).[1] By the present action, plaintiff sought to have the transfer of the security interest set aside in its entirety pursuant to the authority of former section 5127 and *Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26 [283 Cal.Rptr. 584, 812 P.2d 931]. *Droeger* holds that when a nonconsenting spouse, during the marriage, timely challenges a transfer made in violation of former section 5127, the transfer is voidable in its entirety. The superior court set aside the transfer of the security interest in its entirety, concurrently awarding Security Pacific a money judgment against Lezine in the amount of the formerly secured debt. Security Pacific recorded an abstract of judgment (reflecting the money judgment) in the county in which the Halm Avenue property was located.

Thereafter, as part of the division of property in the parties' marital dissolution proceeding, the Halm Avenue property was awarded to plaintiff as her sole and separate property. When plaintiff later discovered the recorded abstract of judgment, she moved for clarification of the judgment in the present action, and the trial court ruled that the abstract of judgment "shall not constitute [a lien]" on the Halm Avenue property. The issue for

---

[1]Effective January 1, 1994, section 5127 was repealed and reenacted without substantive change as Family Code section 1102.

our determination is whether the trial court exceeded its authority in extinguishing Security Pacific's judgment lien encumbering the Halm Avenue property.

Our determination of this issue requires that we review the nature of the equitable relief that may be afforded under former section 5127, including any conditions to that relief, such as restitution of consideration paid for the transfer that is set aside. This issue also requires that we resolve the tension among competing, and facially inconsistent, principles, policies, and statutory rules governing, on the one hand, the rights of spouses who are innocent of wrongdoing under former section 5127 and, on the other hand, the liability of community real property for the satisfaction of debts incurred during the marriage.

For the reasons set forth hereafter, we conclude that the setting aside of a security interest in community real property pursuant to former section 5127, in and of itself, does not cancel the underlying obligation or the liability of the community real property for satisfaction of that obligation. Accordingly, in the present case, the setting aside of Security Pacific's security interest pursuant to former section 5127 did not affect the liability of the community real property for the satisfaction of the money judgment against Lezine in the amount of the loan obligation. Security Pacific's recordation of the abstract of judgment, *prior to the division of property in the marital dissolution proceeding*, created a judgment lien that attached to the Halm Avenue property and was enforceable for satisfaction of the money judgment against Lezine. The trial court therefore exceeded its authority in purporting to extinguish that lien following the division of property. For these reasons, we affirm the judgment of the Court of Appeal, which reversed the trial court's order extinguishing the judgment lien.

I

In 1974, Lezine and plaintiff, a married couple, purchased for their residence the Halm Avenue property, located in the City and County of Los Angeles. In 1989, the Halm Avenue property was encumbered by a deed of trust in favor of San Clemente Savings and Loan Association (San Clemente Savings), and a deed of trust in favor of Imperial Thrift. On November 8, 1989, Lezine forged plaintiff's signature on a quitclaim deed, and the signature falsely was notarized by a notary public. The quitclaim deed purported to divest plaintiff of any interest in the Halm Avenue property.

The quitclaim deed was recorded on January 26, 1990. On that same date, Lezine obtained a loan in the amount of $240,000 from Guardian Savings

and Loan Association (Guardian) secured by a deed of trust executed by Lezine encumbering the Halm Avenue property. Plaintiff was unaware of the loan. Approximately $106,300 of the loan proceeds were used to repay the loan obligations secured by the deeds of trust in favor of San Clemente Savings and Imperial Thrift, as well as other community debts. The balance of the loan proceeds was not used for the benefit of the community.

On April 12, 1990, Lezine obtained a $100,000 line of credit from Security Pacific secured by a deed of trust encumbering the Halm Avenue property. Approximately $60,000 was advanced to Lezine under the line of credit. The trial court found that plaintiff was unaware of the line of credit; no conduct on the part of plaintiff misled Security Pacific as to the validity of the quitclaim deed, and no portion of the proceeds from the line of credit was used for the benefit of the community.

Thereafter, plaintiff learned of the two deeds of trust that newly encumbered the Halm Avenue property. On June 5, 1990, plaintiff filed in the superior court the present equitable action against Lezine, Guardian, and Security Pacific, seeking declaratory relief, quiet title, and cancellation of the deeds of trust. On that same date, plaintiff filed a petition for the dissolution of her marriage (in the domestic relations department of the superior court, separate from the proceedings in the present action). In the present action, Guardian and Security Pacific cross-complained against plaintiff, Lezine, and the notary public, claiming the status of bona fide encumbrancers and seeking declaratory relief, foreclosure of an equitable lien, and indemnity. On July 16, 1991, in the other proceedings, a bifurcated judgment was entered dissolving the Lezine marriage and reserving jurisdiction for the division of property.

On March 6, 1992, the trial court in the present action, following a court trial, entered judgment in favor of plaintiff on the complaint, declaring the deeds of trust void and canceled in their entirety under authority of *Droeger* v. *Friedman, Sloan & Ross, supra,* 54 Cal.3d 26. In its amended statement of decision, the trial court stated that Guardian was, or should have been, aware of the lack of a valid signature by plaintiff on the quitclaim deed, because of irregularities in the loan package. The trial court did not make any similar finding, however, with respect to Security Pacific. The court also entered judgment in favor of Guardian and Security Pacific on their cross-complaints, granting Guardian an equitable lien encumbering the Halm Avenue residence in the amount of $106,305.38 (the extent to which the Guardian loan retired the existing community debt), and awarding judgment in favor of Guardian and Security Pacific against Lezine personally in the amounts of

$302,527.85 and $87,799.59, respectively, and against the bonding company for the notary public in the amount of $10,000 (the bond limit). Neither Guardian nor Security Pacific was awarded any relief against plaintiff personally.

On April 2, 1992, Guardian and Security Pacific recorded abstracts of their money judgment against Lezine in the Los Angeles County Recorder's office.

Three months later, on July 1, 1992, in the marital dissolution proceedings (after a default was entered against Lezine on the reserved issues regarding the division of property), the court awarded plaintiff the Halm Avenue property as her sole and separate property, subject to the equitable lien in favor of Guardian, and assigned the debt formerly secured by the deeds of trust in favor of Guardian and Security Pacific exclusively to Lezine, pursuant to Civil Code former section 4800, subdivision (b)(2).[2] The court awarded the community property business known as Brown Automotive to Lezine as his sole and separate property.

Thereafter, in seeking refinancing to retire the equitable lien in favor of Guardian, plaintiff discovered the two abstracts of judgment that had been recorded by Guardian and Security Pacific and that appeared as liens encumbering title to the residence. On December 11, 1992, plaintiff moved for clarification of the judgment in the present action, urging that the *Droeger* decision compelled a determination that the abstracts of judgment did not create judgment liens that attached to her separate property. Guardian and Security Pacific objected to the proposed amendment, arguing, among other things, that the court lacked jurisdiction to extinguish their liens upon awarding the Halm Avenue property to plaintiff.

The trial court granted plaintiff's motion, issuing an order clarifying that the abstracts of judgment "shall not constitute liens against the [Halm Avenue] real property . . . ."

Security Pacific appealed from the order clarifying the judgment (Code Civ. Proc., § 904.1, subd. (a)(2)), and from the judgment as clarified.[3]

The Court of Appeal reversed, holding that the abstract of judgment, which had been recorded by Security Pacific before the court in the dissolution proceedings awarded the Halm Avenue property to plaintiff as her

---

[2]That statute has been superseded by Family Code section 2602, which provides that, as an offset against the community property, "the court may award, from a party's share, the amount the court determines to have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate."

[3]Guardian timely filed a notice of appeal but subsequently abandoned its appeal.

separate property, created a judgment lien that attached to the community real property, and that plaintiff accordingly acquired the Halm Avenue property as her separate property subject to the judgment lien.

In reaching its holding, the Court of Appeal first determined that "the trial court properly relied on *Droeger* in voiding the deeds of trust in favor of Guardian Savings and [Security Pacific] . . . ." The appellate court further noted, however, that, separate and apart from the principles stated in *Droeger*, the community estate is liable for a debt incurred by either spouse during the marriage, regardless whether both spouses are parties to the debt or to a judgment for a debt, and that this liability continues until the property is awarded to one spouse as his or her separate property in a dissolution proceeding. Accordingly, the Halm Avenue property, having the status of community property, was liable for the loan obligations incurred by Lezine during the marriage. Under judgment lien law, the recordation of the abstracts of judgment in Los Angeles County created judgment liens that attached to the community real property located in that county, including the Halm Avenue property. When plaintiff subsequently was awarded the Halm Avenue property, she took it subject to the encumbrance of the judgment lien, which was enforceable for the satisfaction of the money judgment.

The dissenting justice reached the opposite view, concluding that "[i]f [former] section 5127 and the Supreme Court's decision in *Droeger* v. *Friedman, Sloan, & Ross, supra,* 54 Cal.3d 26 are to serve any purpose, a trial court must possess the equitable power to prevent the canceled deed of trust from being converted into a judgment lien on the same real property."

We granted review to determine whether community real property remains liable for satisfaction of a debt after the transfer of a security interest, which secured repayment of that debt, is set aside pursuant to former section 5127.

## II

Before stating the various contentions of the parties and framing the legal issues presented for our determination, we shall review the statutory schemes governing the liability of community property for marital debts, as well as the liability of real property received by the nondebtor spouse following the division of property in a dissolution proceeding. We shall then turn to former section 5127 and its purpose and underlying policies.

We consider first the applicable rules governing the liability of community property for debts incurred during the marriage (such as the loan obligation incurred by Lezine owing to Security Pacific). ██ In general,

"[e]xcept as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." (Fam. Code, § 910, subd. (a).) Thus, the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively for his or her own personal benefit. (See *Robertson v. Willis* (1978) 77 Cal.App.3d 358, 362 [143 Cal.Rptr. 523]; *Stratton v. Superior Court* (1948) 87 Cal.App.2d 809 [197 P.2d 821].) Although a spouse may be required to reimburse the community for the misuse of community assets (see, e.g., Fam. Code, §§ 1101, 2602; *In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1318 [284 Cal.Rptr. 41]; *In re Marriage of Lister* (1984) 152 Cal.App.3d 411, 418-419 [199 Cal.Rptr. 321]), the community estate remains liable to third party creditors for any debt incurred as a result of such misuse of assets.

Code of Civil Procedure section 695.020 addresses specifically the liability of community property for money judgments. That statute provides in pertinent part: "(a) Community property is subject to enforcement of a money judgment as provided in the Family Code. [¶] (b) Unless the provision or context otherwise requires, *if community property that is subject to enforcement of a money judgment* is sought to be applied to the satisfaction of a money judgment: [¶] (1) Any provision of this division that applies to the property of the judgment debtor or to obligations owed to the judgment debtor also applies to the community property interest of the spouse of the judgment debtor and to obligations owed to the other spouse that are community property." (Italics added.)

Under these provisions, all of the community property of plaintiff and Lezine was liable for the debts incurred by Lezine during the marriage, including the loan obligations owing to Guardian and Security Pacific. Additionally, the community property, including the Halm Avenue property, was subject to enforcement of the money judgment against Lezine prior to the property division, unless some contrary rule "otherwise requires" (Code Civ. Proc., § 695.020, subd. (b)). ■ Contrary to the contention of plaintiff, the community estate was not exempt from liability for the money judgment simply because the judgment was rendered subsequent to the "status only" judgment of dissolution, where the underlying debt arose prior to dissolution of the marriage. (See *Kinney v. Vallentyne* (1975) 15 Cal.3d 475, 478-479 [124 Cal.Rptr. 897, 541 P.2d 537].)

Under California's judgment lien law, a judgment creditor's recordation of an abstract of judgment creates a judgment lien that attaches to all real

property situated in the county in which the judgment is recorded and that otherwise is subject to enforcement of the money judgment against the debtor. (Code Civ. Proc., §§ 697.310, 697.340.)[4]

Finally, at the time of the present proceedings, former section 5120.160 of the Civil Code[5] governed the liability of community property for marital debts following the division of property in a marital dissolution proceeding. That statute provided in relevant part: "(a) Notwithstanding any other provision of this article, after division of community and quasi-community property pursuant to Section 4800: [¶] . . . [¶] (2) The separate property owned by a married person at the time of the division and the property received by the person in the division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. *Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property.*" (Italics added.) Under this provision, following the division of property, the community property awarded to one spouse no longer is liable for marital debts that are assigned to the other spouse, with the exception that the award of community real property to one spouse that is subject to a lien remains liable for satisfaction of the lien, i.e., the lien remains enforceable to satisfy the underlying debt. (See *Kinney* v. *Vallentyne, supra,* 15 Cal.3d 475, 479.) If the property division requires one person to pay a debt, and the creditor satisfies a money judgment for that debt from the property that was awarded to the person's spouse (e.g., through the enforcement of a lien), the person's spouse has a right of reimbursement from that person to the extent of the property applied. (Civ. Code, former § 5120.160, subds. (a)(2), (b).)

Under these rules, if a valid judgment lien in favor of Security Pacific attached to the Halm Avenue property before it was awarded to plaintiff as her sole and separate property, plaintiff received the property subject to the lien, and the property remained liable for satisfaction of the lien, even though the underlying debt was assigned to Lezine. In the event Security Pacific satisfies the judgment by enforcement of the lien, plaintiff

---

[4]Code of Civil Procedure section 697.310, subdivision (a), provides: "Except as otherwise provided by statute, a judgment lien on real property is created under this section by recording an abstract of a money judgment with the county recorder."

Code of Civil Procedure section 697.340, subdivision (a), provides in part: "A judgment lien on real property attaches to all interests in real property in the county where the lien is created . . . that are subject to enforcement of the money judgment against the judgment debtor . . . ."

[5]Effective January 1, 1994, former section 5120.160 of the Civil Code was repealed and reenacted without substantive change as Family Code section 916.

has a right of reimbursement against Lezine to the extent of the property applied.

The question before us is whether the foregoing rules and principles governing the liability of the Halm Avenue property for the loan obligations incurred by Lezine are altered or otherwise affected by former section 5127, or the circumstance that the deed of trust that formerly secured that obligation was set aside pursuant to former section 5127.

Former section 5127 provided in pertinent part that "either spouse has the management and control of the community real property . . . but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered . . . ."[6] The statutory provision requiring that both spouses join in the execution of any instrument transferring an interest in real property first appeared in former section 172a of the Civil Code (Stats. 1917, ch. 583, § 2, p. 829), the predecessor to former section 5127. The enactment of former section 172a reflected the evolution of community property law in recognizing the wife's equal status, and a legislative intent to protect the innocent spouse against an unauthorized transfer of community real property by the other spouse. (See *Droeger* v. *Friedman, Sloan, & Ross, supra,* 54 Cal.3d at pp. 32-33.) In *Britton* v. *Hammell* (1935) 4 Cal.2d 690 [52 P.2d

---

[6]Former section 5127 provided in its entirety as follows: "Except as provided in Sections 5110.150 and 5128, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided, also, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed prior to January 1, 1975, and that the sole lease, contract, mortgage, or deed of either spouse, holding the record title to community real property to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed on or after January 1, 1975. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of either spouse alone, executed by the spouse alone, shall be commenced after the expiration of one year from the filing for record of that instrument in the recorder's office in the county in which the land is situate, and no action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, which was executed by the husband alone and filed for record prior to the time this act takes effect, in the recorder's office in the county in which the land is situate, shall be commenced after the expiration of one year from the date on which this act takes effect."

221], the court held that if the nonconsenting spouse challenges a unilateral *gift* of community real property by the consenting spouse during the marriage, the nonconsenting spouse is entitled to set aside the gift in its entirety, rather than solely the transfer of his or her one-half community share. (4 Cal.2d at p. 692.) The *Britton* decision, as well as other early cases applying former section 172a, involved the setting aside of a *gift* of community real property in contrast to the circumstances of the present case, involving a transfer made in exchange for consideration.

In 1969, former section 172a of the Civil Code became part of the Family Law Act as section 5127 (Stats. 1969, ch. 1608, § 8, p. 3342). In *Droeger* v. *Friedman, Sloan, & Ross, supra,* 54 Cal.3d 26, this court, reaffirming prior decisional law, held that under former section 5127, both spouses must consent to the transfer of an interest in community real property, regardless whether the transaction is a gift or supported by consideration. Resolving a conflict among appellate decisions as to the relief that may be afforded under former section 5127, the court, citing among other authority *Britton* v. *Hammel, supra,* 4 Cal.2d 690, further held that when a nonconsenting spouse, during the marriage, timely challenges a transfer made in violation of former section 5127, the transfer is voidable in its entirety. (54 Cal.3d at p. 30.)

In *Droeger* v. *Friedman, Sloan & Ross, supra,* 54 Cal.3d 26, after husband and wife had separated, wife encumbered two parcels of community real property with deeds of trust in order to secure repayment of attorney fees incurred during the dissolution proceedings. Husband did not join in the execution of the deeds of trust and, while the dissolution proceedings were pending, he filed an action to quiet title, challenging the validity of the deeds of trust in favor of wife's attorneys. This court held that, because the husband's consent was required under former section 5127 to effect the encumbrance, he was entitled to invalidate the encumbrance in its entirety, and was not limited to setting aside the transfer only with respect to his one-half community interest. (*Droeger, supra,* 54 Cal.3d at p. 30.) The court reasoned that any lesser relief would contravene principles of equal management and control of community property, and the fundamental premise that neither spouse acting alone may partition the community estate during the marriage. Allowing any part of the transfer to stand could have the effect of partitioning the community estate during marriage, whereas California law provides for such division only (i) after termination of marriage by legal proceedings or death, or (ii) during marriage with the consent of both spouses. The court further noted that the enforcement of any part of a unilateral transfer effectively would transmute community property into a

tenancy in common, resulting in the nonconsenting spouse being forced to become a tenant in common with a stranger. (*Id.* at pp. 46-47.)

The court in *Droeger* further concluded that, although economically weak spouses are at a disadvantage in securing adequate counsel in dissolution proceedings, nothing in the language or legislative history of former section 5127 permitted the general rule against unilateral transfers to be subject to an exception for securing attorney fees in dissolution proceedings. (54 Cal.3d at p. 41.)[7]

Significantly (with respect to the issue presented in this case), the court in *Droeger* did not address the effect of the cancellation of the deeds of trust on the underlying obligation for payment of attorney fees; in other words, the court did not hold that, as a result of the setting aside of the security for the underlying debt, the community estate no longer was liable for the payment of attorney fees, or that the attorney creditors no longer could seek to apply the community real property formerly encumbered by the deeds of trust toward satisfaction of an obligation for payment of attorney fees.

The specific issue before us is whether the trial court, in addition to setting aside Security Pacific's deed of trust encumbering the Halm Avenue property pursuant to former section 5127, had the authority to extinguish a lien that otherwise would be enforceable to satisfy a money judgment arising from the setting aside of that deed of trust. The Court of Appeal concluded that, as a result of setting aside the deed of trust pursuant to former section 5127, Security Pacific's security for the community debt was canceled but that the underlying community debt was not, and the relief afforded under former section 5127 did not alter the liability of the community real property for the underlying debt, or the enforcement of a money judgment for that debt. The Court of Appeal further concluded that, under Family Code section 916, the award of the Halm Avenue property to plaintiff as her separate property did not affect the enforceability of the judgment lien; accordingly the trial court lacked authority to extinguish the judgment lien in favor of Security Pacific.

Urging a contrary result, plaintiff maintains that when a security interest in community real property that was transferred unilaterally by a debtor

---

[7]In response to the *Droeger* decision, the Legislature in 1992 enacted former sections 4372 and 4373 of the Civil Code, providing procedures for the encumbrance of a spouse's interest in community real property in order to pay attorney fees in actions under the Family Law Act. Former section 5127 also was amended to state that "[n]othing in this section shall preclude either spouse from encumbering his or her interest in community real property as provided in Section 4372."

Effective January 1, 1994, former sections 4372 and 4373 of the Civil Code were repealed and replaced by Family Code sections 2033 and 2034.

spouse in violation of former section 5127 is canceled, that real property no longer is liable for satisfaction of a money judgment that previously was secured by the deed of trust. Otherwise, argues plaintiff, the nonconsenting spouse is in the same position after the security interest is set aside as he or she was in prior to the granting of relief, i.e., the property remains subject to an encumbrance in the amount of the underlying loan obligation; consequently the relief afforded under former section 5127 would be nullified, and the action to set aside the unilateral transfer will have been a futile act. Such a result, urges plaintiff, would be contrary to the legislative purpose of former section 5127.

In resolving the issue presented, we note there is scant authority pertaining to the rights and remedies, in general, of a transferee of an interest in community real property after the unauthorized transfer is set aside pursuant to former section 5127. In one early decision involving a unilateral transfer made in violation of former section 172a of the Civil Code (the predecessor to former section 5127), the court held that, although the transfer was voidable by the nonconsenting wife, the third party innocent purchaser, without knowledge of the marriage, was entitled to restoration of the purchase price from the community. (*Mark* v. *Title Guarantee etc. Co.* (1932) 122 Cal.App. 301 [9 P.2d 839].) In *Mark*, the husband had transferred to a third party the community interest in a contract for the sale of real property, without the knowledge or consent of his wife, and had retained for his own use and benefit the sale proceeds paid by the purchaser.

This court concluded that the wife was entitled to set aside the unilateral transfer, pursuant to former section 172a of the Civil Code. The court further held, however, that the bona fide purchaser, without knowledge of the marriage relationship, was entitled to restoration of the purchase price from the community. In reaching this conclusion, the court first noted "the difficulty of protecting the expectancy of the innocent wife and at the same time of safeguarding the rights of innocent purchasers . . . ." (*Mark* v. *Title Guarantee etc. Co., supra*, 122 Cal.App. at p. 311.) Nonetheless, the court further observed that although husband had misappropriated the sale proceeds for his own personal use and benefit, the proceeds had the character of community property and had been paid into the community estate. "The fact that the wife derived no benefit from the transaction and that the husband expended the whole of the proceeds for his own sole benefit did not change the complexion of the property. Its character was not altered because the husband, instead of conserving the money, used it for his own purposes." (*Id.* at p. 312.) The court accordingly concluded that the community was required to reimburse the purchaser for the consideration paid as a condition of the set-aside relief.

In *Andrade Development Co.* v. *Martin* (1982) 138 Cal.App.3d 330 [187 Cal.Rptr. 863], the court observed, in dicta, that in the case of a contract for the sale of community real property that is voided pursuant to former section 5127, the purchaser who acquired the contractual interest in the property, in good faith and without knowledge of the marriage relationship, might be entitled to damages for breach of contract from the community estate. (138 Cal.App.3d at pp. 337-338.)

Legal commentators have noted that, in the case of a unilateral transfer that is set aside pursuant to former section 5127, the third party transferee properly should be deprived of any interest in the real property itself, but should be permitted to assert rights as an unsecured creditor for repayment of whatever consideration was passed in exchange for the ineffective title. "This solution would entail no violation of community property management principles, as either spouse may unilaterally incur a debt for which the community is liable." (Bruch, *Protecting the Rights of Spouses in Intact Marriages: The 1987 California Community Property Reform and Why It Was So Hard to Get* (1990) Wis. L.Rev. 731, 743, fn. 35; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1996) ¶ 8:687, p. 8-166 ["Arguably . . . since set-aside relief is an equitable remedy, it should be ordered *subject to* the return of consideration paid by the *innocent* purchaser who entered the transaction having no knowledge and no reason to know the transferor was married."].)

The foregoing rules and principles articulated in *Mark* and *Andrade*, and by family law commentators, are consistent with the rules generally governing the liability of community property for marital debts, as well as with equitable principles. When these rules and principles are applied to the transfer of a security interest in community real property, if the security interest is forfeited pursuant to former section 5127 the community remains liable to the formerly secured creditor for the underlying debt. The loss of the security does not extinguish the underlying debt, or the character of that unsecured debt as one for which the community estate is liable. (See *Mitchell* v. *American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220, 223 [167 Cal.Rptr. 760], disapproved on other grounds in *Droeger* v. *Friedman, Sloan & Ross*, *supra*, 54 Cal.3d at p. 39.) In *Mitchell*, the court stated that in the case where the unilateral transfer that is set aside is an encumbrance, "what is removed is only the *encumbrance*, without any effect upon the underlying obligation which it secures. That this is so seems evident from a consideration of Civil Code [former] section 5116, which provides that 'The property of the community is liable for the contracts of either spouse which are made after marriage. . . .'" (110 Cal.App.3d at p. 223, italics in original.) *Droeger*

overruled *Mitchell* to the extent that the latter decision held that the remedy available to the nonconsenting spouse was limited to a set-aside of that spouse's one-half interest. *Droeger,* however, did not disagree with the premise stated in *Mitchell* that it is only the encumbrance that is expunged pursuant to former section 5127, and not the underlying obligation secured by the encumbrance. (54 Cal. 3d at pp. 36-37.)

■ Under the foregoing principles, a court in equity may require as a condition to the granting of equitable relief under former section 5127 the restoration of any consideration transferred by an innocent encumbrancer in exchange for the security interest, who acts without knowledge of the community status of the property. ■ The trial court in the present case granted such relief in the form of a money judgment against Lezine.[8] At the time of the entry of that judgment (prior to the property division in the separate marital dissolution proceedings), the community property (which included the Halm Avenue property) was liable for satisfaction of that money judgment.

The remaining question is whether former section 5127, or any policy underlying that statute, precludes a creditor such as Security Pacific from seeking to apply community real property toward satisfaction of a debt that previously was secured by that same real property but which security interest was voided under former section 5127. ■ The plain language of the current statute, requiring that "both spouses . . . must join in executing any instrument by which such community real property or any interest therein . . . ." is transferred, reflects a legislative intent to protect an innocent spouse against an unauthorized unilateral transfer of community real property by the other spouse. Nothing in the foregoing statutory language refers to the liability of community real property for marital debts. In contrast, the Legislature has enacted a variety of statutory schemes that expressly exempt or otherwise protect the interests of a real property owner from creditor claims, such as the provisions for declared homesteads (Code Civ. Proc., § 704.910 et seq.) or governing home equity sales contracts (Civ. Code, § 1695.1). No part of former section 5127, however, indicates any similar intent to exempt community real property from liability for marital debts, even debts incurred unilaterally by one spouse.

---

[8]We have no occasion to determine the rights and remedies available to an encumbrancer that, at the time of the creation of the encumbrance, had knowledge of the marriage relationship or knew the transfer was in violation of former section 5127. In the present case, record title to the Halm Avenue property stood in Lezine's name alone. Moreover, although (as stated previously) the trial court found that Guardian was or should have been aware of the lack of a valid signature by plaintiff on the quitclaim deed because of irregularities in the loan package, the record does not reflect any similar finding with respect to Security Pacific.

Instead, as reflected in Code of Civil Procedure section 695.020, the Legislature expressly has established the liability of community real property for the satisfaction of money judgments rendered against either spouse, including the nondebtor spouse's one-half community interest. Indeed, because California law governing the enforcement of judgments and debts enables a judgment creditor of one spouse to levy execution on community real property, "[i]n effect, one spouse alone can indirectly alienate community realty by incurring an enforceable obligation and refusing to pay it." (Reppy, *Debt Collection From Married Californians: Problems Caused by Transmutations, Single-Spouse Management, and Invalid Marriage* (1981) 18 San Diego L.Rev. 143, 169, fn. omitted.) Thus, for example, one spouse unilaterally may incur credit card charges which, if unpaid, may be reduced to a money judgment that may be satisfied from community real property. The Legislature has not created any statutory exception—either in former section 5127 or any other statute—for money judgments reflecting a debt arising from, or formerly secured by, a unilateral transfer of community real property made in violation of former section 5127.

Thus, construing former section 5127 with reference to, and in harmony with, the various statutory schemes governing the liability of community property for marital debts, it does not appear that the purpose or effect of former section 5127 is to exempt community real property from liability for satisfaction of marital debts incurred unilaterally by one spouse, for which the community otherwise is liable. Thus, the creditor who loses its security interest under former section 5127 retains the rights of any other unsecured creditor to resort to the community real property for satisfaction of the underlying debt.

If we were to conclude, as plaintiff urges, that, after a security interest in real property is set aside pursuant to former section 5127, the formerly secured creditor no longer may resort to the property to satisfy the debt, that creditor would be placed in a position less advantageous than that of other unsecured creditors of the community estate—the formerly secured creditor, having obtained a judgment against the debtor spouse, would be precluded from establishing a judgment lien that attaches to the community real property to satisfy the judgment, while the unsecured creditor (such as the credit card issuer, for example), after obtaining a judgment against the debtor spouse, could proceed to record an abstract of judgment creating a judgment lien that attaches to the community real property. There is no principled basis for treating the formerly secured creditor, who originally obtained its security interest in good faith, less favorably than any other unsecured creditor, with respect to the ability to resort to community real property to satisfy a money judgment for which the community is liable.

For these reasons, we conclude that neither former section 5127 nor *Droeger* carves out an exception to the rules governing the liability of community real property for enforcement of a money judgment against a debtor spouse, or the enforceability of a judgment lien that has attached to community real property for satisfaction of a money judgment. Accordingly, a creditor who previously has forfeited a security interest in community real property under former section 5127 is placed in the position of any other unsecured creditor entitled to seek a judgment against the debtor spouse, and to enforce its money judgment against the community estate. Furthermore, the judgment creditor's recordation of an abstract of judgment creates a judgment lien that attaches to the community real property and that may be enforced to satisfy the lien.

We recognize that our holding effectively may nullify in substantial part the relief afforded under former section 5127 when the unilateral transfer is a security interest for the repayment of a debt. If the creditor obtains a judgment for the amount of the debt when the security interest is set aside and records an abstract of judgment, the security interest will be converted into a judgment lien encumbering the community real property. Nevertheless, the purpose of the statute is served—the unauthorized direct transfer is cancelled, and both spouses retain full management and control of the property. Moreover, as explained above, the same result could obtain had the court set aside a unilateral sale or lease of the property and rendered judgment in favor of the purchaser or lessee for the amount of the consideration paid.

Accordingly, in the present case, after Security Pacific's deed of trust was set aside pursuant to former section 5127 and Security Pacific was awarded a money judgment against Lezine, it was placed in the position of any other judgment creditor entitled to enforce the judgment against the community estate. By recording an abstract of judgment in Los Angeles County, reflecting the money judgment against Lezine, Security Pacific created a judgment lien that attached to all real property in Los Angeles County that was subject to enforcement of the money judgment, including the Halm Avenue property.

The transfer of the Halm Avenue property to plaintiff in the property division as her sole and separate property, after the judgment lien of Security Pacific had attached, did not alter the liability of the property to satisfy the lien or otherwise affect the judgment lien. As explained previously, under former section 5120.160 of the Civil Code the allocation of community real property to the nondebtor spouse in the property division does not affect the

enforceability of any liens that previously attached to that real property, even if the underlying debt is assigned exclusively to the debtor spouse. The community real property awarded to the nondebtor spouse remains liable for satisfaction of existing liens (see *Kinney* v. *Vallentyne, supra,* 15 Cal.3d at p. 479), and the nondebtor spouse may seek reimbursement against the debtor spouse to the extent the property is applied in satisfaction of the liens. (Civ. Code, former § 5120.160, subd. (b); see Hogoboom & King, Cal. Practice Guide: Family Law, *op. cit. supra,* ¶ 8:785, pp. 8-189 to 8-190.) Accordingly, the trial court in the present case lacked authority to expunge Security Pacific's judgment lien after the court in the marital dissolution proceedings awarded the Halm Avenue property to plaintiff as her separate property.

Arguing that this result is inequitable, plaintiff maintains that, had she challenged the validity of the deeds of trust in the marital dissolution proceedings, the court in those proceedings would have set aside the deeds of trust and, concurrently, awarded the Halm Avenue property to plaintiff as her sole and separate property, while assigning the money judgment to Lezine as his separate debt. Under the foregoing sequence of events, plaintiff argues, she would have received the Halm Avenue property as her sole and separate property prior to the recordation of an abstract of judgment, or the creation of a judgment lien. After plaintiff received the property unencumbered by the judgment lien, the Halm Avenue property no longer would be liable for satisfaction of the money judgment against Lezine. Accordingly, plaintiff maintains she has been penalized for timely challenging the validity of the deeds of trust in a separate proceeding prior to the division of the community property.

Plaintiff, however, elected to challenge the deeds of trust in the present equitable action, which was separate from the marital dissolution proceeding; accordingly, plaintiff deprived herself of any of the potential benefits under Civil Code former section 5120.160, applicable exclusively to the division of community property in a marital dissolution action.

Moreover, it is not clear that plaintiff would have received greater relief under Civil Code former section 5120.160, had she challenged the deeds of trust in the dissolution proceedings rather than in the separate set-aside proceedings. Had plaintiff moved to set aside the trust deeds in the marital dissolution proceeedings, Security Pacific would have been made a party to those proceedings. Once the court presiding over the marital dissolution proceedings had set aside the trust deed, it presumably would have considered the interests of Security Pacific in deciding how to divide the community property and the underlying debt, pursuant to Civil Code former section

5120.160. When the Legislature enacted that statute, it was contemplated that "[i]n allocating the debts to the parties, the court in the dissolution proceeding should take into account the rights of creditors so there will be available sufficient property to satisfy the debt by the person to whom the debt is assigned, provided the net division is equal." (See Recommendation Relating to Liability of Marital Property for Debts (Jan. 1983) 17 Cal. Law Revision Com. Rep. (1984) pp. 23-24, fn. omitted.) Conceivably, the court in the marital dissolution proceedings could have awarded Security Pacific an equitable lien in the amount of the formerly secured debt, or some further protection for the repayment of the loan obligation in the event the Halm Avenue property was awarded to plaintiff as her separate property.

We recognize that the result we reach may appear inequitable in some respects. An institutional lender such as Security Pacific may be in a far better position than the innocent nondebtor spouse to protect against forgeries and deception by a debtor spouse such as Lezine who seeks a loan to be secured by community real property. The result we reach nevertheless is dictated by existing legislation protecting the rights of creditors.

For the foregoing reasons, we conclude that the Court of Appeal properly determined that the trial court exceeded its authority in declaring the Halm Avenue property free of any judgment lien in favor of Security Pacific. Our holding is without prejudice to the right of plaintiff to seek a reallocation of the community property as to which the court in the marital dissolution proceeding retained jurisdiction.

### III

The judgment of the Court of Appeal is affirmed.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.